IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| DONALD DEAN BIEDERMAN, | CV-18-00016-GF-BMM-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| ASSISTANT WARDEN DEBORAH POWELL, KARI ALSTAD, PETER MOLNAR, and AMBER MASSEY, | |
| Defendants. | |

Pending before the Court are Defendants' Motions for Summary Judgment (Docs. 32, 61, 65) and Plaintiff Donald Biederman's Motions for Reconsideration (Docs. 82, 83).  Mr. Biederman, a pro se prisoner, filed a Complaint on January 31, 2018 alleging Defendants failed to provide him with adequate medical care during his incarceration at Crossroads Correctional Center in violation of Montana Code Ann. § 45-5-204 (a criminal code statute) and the Eighth Amendment. (Complaint, Doc. 2.)  Mr. Biederman alleges Defendants failed to provide him with medical care for his chronic knee, back, and hip pain and for his Hepatitis-C. He also alleges the medications Defendants provided him could damage his liver and "maybe kidneys."  (Complaint, Doc. 2 at 8.)

Having considered the parties' arguments and submission, Defendants have

1

established there is no genuine dispute as to any material fact regarding the merits of Mr. Biederman's claims.  Accordingly, Defendants' motions for summary judgment should be granted on the merits and this matter should be dismissed.[1]

Mr. Biederman's motions for reconsideration and the documents sought therein do not affect the Court's analysis on the motions for summary judgment. The motions for reconsideration will be denied as moot.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

---

[1]In light of the finding that this matter should be dismissed based upon the merits of Mr. Biederman's claims, the Court finds that Ms. Alstad's motion for summary judgment based upon failure to exhaust administrative remedies (Doc. 32) should be denied as moot.

admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually

does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence."  *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate

from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586 (citations omitted).

By notices provided on September 28, 2018 (Doc. 35) and January 18, 2019 (Docs. 64, 69), Mr. Biederman was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II.  UNDISPUTED FACTS

Mr. Biederman was incarcerated at Crossroads Correctional Center in Shelby, Montana between July 12, 2017 and January 18, 2019.  (CoreCivic Defendants' Statement of Undisputed Facts, Doc. 67 (hereinafter "SUF") at ¶ 1; Notice of Change of Address, Doc. 72.)  Mr. Biederman had an initial intake physical at Crossroads on July 18, 2017.  He reported a past medical history of Hepatitis C, hypertension, chronic back pain, and pelvic pain; a 1990 motorcycle collision that resulted in multiple pelvic fractures; and a past surgical history of cholecystectomy and a chest tube thoracostomy.  He also reported a social history of a half pack per day tobacco for 40 years, he described daily alcohol use until he

feels no pain, and illicit intravenous drug use of methamphetamine.  Mr.
Biederman was placed in the chronic care clinic upon arrival.  He was scheduled
for and provided chronic care visits at least twice yearly.  (SUF at ¶ 13.)  The
medical records filed by Defendants indicate Mr. Biederman had chronic care
visits on August 7, 2017, October 25, 2017, January 22, 2018, April 13, 2018, and
October 5, 2018.  (Medical Records, Doc. 68-1 at 66-90.)

According to Defendant Molnar, Mr. Biederman has no symptoms or
diagnoses of any kidney or liver condition.  (SUF at ¶ 14.)  Although Mr.
Biederman has hypertension, it was controlled with a goal of less than 140/80.  His
blood pressure medication while at Crossroads was Hydrochlorathizide 25 mg
daily and Metoprolol 50 mg twice daily.

On August 29, 2018, Mr. Biederman was seen and evaluated by a
cardiologist, Dr. Bansal, at Benefis Heart and Vascular Clinic for evaluation of a
heart murmur and chest pains.  (Medical Records, Doc. 68-1 at 129-133.)  Dr.
Bansal recommended a 2D-Echocardiogram.  He felt Mr. Biederman's chest wall
pain was atypical but did not deem it necessary to pursue a noninvasive ischemic
work up.  An echocardiogram was done which showed a normal ejection fraction,
negative for valvular disease, and a possible bicuspid aortic valve.  Mr. Biederman
was referred back to Dr. Bansal to review of the echocardiogram results and to

discuss and develop a plan of care.  (SUF at ¶ 15.)

Mr. Biederman's Hepatitis C was monitored while he was at Crossroads with liver function studies and fibrosis 4 scoring at least every six months.  The Montana Department of Corrections (MDOC) follows Montana Medicare guidelines for hepatitis treatment.  Currently a patient must have a fibrosis 4 score greater than 1.45 to be considered for treatment.  Mr. Biederman was consistently less than 1.45 while at Crossroads.  In April 2018, Mr. Biederman had a fibrosis 4 score of 1.17 but he refused to have his labs done in October 2018.  (SUF at ¶ 16.)

While at Crossroads, Mr. Biederman reported chronic pain in his low back, pelvis, and right knee but he reported no symptoms of radicular pain from his back including hip and leg pain, numbness or tingling of the legs, or weakness of the legs with ambulation.  On January 27, 2017, prior to his most recent incarceration at Crossroads, Mr. Biederman had an MRI on his lumbar spine which showed multilevel mild degenerative disc disease but it was negative for any foraminal or central canal stenosis.  (SUF at ¶ 18.)

On May 16, 2018, Mr. Biederman was seen and evaluated for his knee pain by Dr. William Crane, the Crossroads medical director.  Dr. Crane referred Mr. Biederman to physical therapy for the knee pain and requested that an MRI be done on his right knee. On June 27, 2018, Mr. Biederman attended a physical

7

therapy consultation through an off-site provider at Marias Medical Center and he was given knee exercises.  (SUF at ¶ 19.)

Mr. Biederman's case was presented before the MDOC medical review panel in September 2018.  The panel denied Crossroads' medical providers' request for an MRI of the right knee but approved an orthopedic evaluation through an off-site provider.  (SUF at ¶ 20.)  Mr. Biederman attended this orthopedic consultation at Benefis Medical Center on September 26, 2018 and was evaluated by Gregory Scott PA-C.  Updated imaging again revealed medial compartment osteoarthritis.  Mr. Biederman consented to a steroid injection.  (SUF at ¶ 21.)  The orthopedic consult recommended a synvisc injection if Mr. Biederman saw no improvement from the steroid injection.  (SUF at ¶ 22.)

Thereafter, however, Mr. Biederman refused follow up at Crossroads to evaluate his knee pain.  According to Defendant Molnar, Mr. Biederman's refusal to come to the clinic for additional evaluation and medical care for his knee made it impossible to provide any other care for his alleged chronic pain.  (SUF at ¶¶ 23, 25.)  Mr. Biederman never reported to the clinic at Crossroads that he was unable to perform his normal daily activities and he was observed on many occasions performing those activities without a cane, walker, or other medical support device.  (SUF at ¶ 26.)  No medical provider at Crossroads nor any off-site

provider ever determined that Mr. Biederman needed a knee replacement.  (SUF at ¶ 31.)

## III.  DISCUSSION

### A.  Denial of Medical Care

In order to prove a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Thus, in order to prevail, Mr. Biederman must show both that his medical needs were objectively serious, and that Defendants possessed a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 299 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992) (on remand).  The Court will assume for purposes of these Findings that Mr. Biederman has serious medical needs.  Therefore, the issue herein is whether Defendants possessed a sufficiently culpable state of mind.  The requisite state of mind for a denial of medical claim is "deliberate indifference."  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference."  Negligence is insufficient.  *Farmer*, 511 U.S. at 835.  Deliberate indifference is established only

where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted).  Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted).

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

There is insufficient evidence to establish a genuine issue of material fact regarding whether Defendants were deliberately indifferent to Mr. Biederman's serious medical needs.  The Court has carefully reviewed Mr. Biederman's medical records, medical requests, and grievances, and Defendant Molnar's affidavit.  Mr. Biederman's medical conditions were treated at Crossroads with frequent chronic care visits, an off-site physical therapy appointment, a bottom bunk restriction, knee steroid injections, a cardiac evaluation, and an orthopedic evaluation.  He was prescribed multiple medications including several

10

nonsteroidal anti-inflammatories such as Diclofenac, meloxicam, naproxen, and ibuprofen and other medications including Duloxetine, Oxcarbazepine, and nortriptyline.  (SUF at ¶ 24.)  While at Crossroads between July 12, 2017 and January 18, 2019, Mr. Biederman was seen James Heneghan MD for his mental health needs on July 19, 2017, July 8, 2018, and October 3, 2018 (SUF at ¶ 27), by Dr. Crane on October 25, 2017 and August 14, 2018 (SUF at ¶ 28), by a Benefis medical center cardiologist on August 29, 2018 (SUF at ¶ 29), and by Benefis medical orthopedics on September 26, 2018 (SUF at ¶ 30).

In light of the documented medical treatment Mr. Biederman received at Crossroads, he cannot show that Defendants' actions were "a purposeful act or failure to respond to [his] pain or possible medical need," and "harm caused by the indifference." *Jett*, 439 F.3d at 1096.  At most, Mr. Biederman has established a disagreement between himself and Defendants regarding what treatment was necessary to treat his medical issues.  "A difference of opinion between a physician and the prisoner-or between medical professionals-concerning what medical care is appropriate does not [without more] amount to deliberate of indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled on other grounds, Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).  To establish that the difference of opinion rises to the level of deliberate indifference,

a prisoner must show that the defendant's chosen course of treatment was

medically unacceptable and in conscious disregard of an excessive risk to

plaintiff's health.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).  There

has been no such showing in this case.  Mr. Biederman makes conclusory

arguments that Defendants have denied him medical treatment but Defendants

presented unrefuted medical evidence that Mr. Biederman received adequate

medical care while at Crossroads.  Mr. Biederman has not established that

Defendants' chosen course of treatment was medically unacceptable.

### B.  Montana Code Ann. § 45-5-204

Mr. Biederman raised a claim under Mont. Code Ann. § 45-5-204 which is

part of Montana's Criminal Code and provides:

> (1) A person commits the offense of mistreating prisoners if, being
> responsible for the care or custody of a prisoner, the person purposely
> or knowingly:
>> (a) assaults or otherwise injures a prisoner;
>> (b) intimidates, threatens, endangers, or withholds reasonable
>> necessities from the prisoner with the purpose to obtain a
>> confession from the prisoner or for any other purpose; or
>> (c) violates any civil right of a prisoner.

Mont. Code. Ann. § 45-4-204(1).  Defendants are correct that Mr. Biederman does

not have standing to bring a claim for an alleged violation of a Montana criminal

statute.  *United States v. Batchelder*, 442 U.S. 114, 124 (1979)(the decision

whether to prosecute rests in the prosecutor's discretion); *see also Jones v. Virga*, 2013 WL 1737137, *2 (E.D.Cal. Apr. 22, 2013)(pro se inmate cannot bring criminal claim in a civil complaint regarding prison conditions, only the government can bring criminal complaint).

## IV.  CONCLUSION

Assuming that Mr. Biederman has serious medical conditions, there is a lack of a genuine issue of material fact as to whether Defendants were deliberately indifferent to those issues.  Mr. Biederman presented no evidence (other than his opinion) that the treatment provided by Defendants was medically insufficient. Rather he has only suggested a difference of opinion about the best way to treat his pain which is insufficient to state a claim for deliberate indifference.   Mr. Biederman failed to provide any specific, supported, or material evidence to dispute the undisputed facts presented by Defendants.  Mr. Biederman has not presented sufficient evidence of deliberate indifference sufficient to support a claim under the Eighth Amendment.  Defendants' motions for summary judgment on the merits of Mr. Biederman's claims should be granted.

Based upon the foregoing, the Court issues the following:

**ORDER**

Mr. Biederman's Motions for Reconsideration (Docs. 82, 83) are DENIED

13

AS MOOT.

Further, the Court issues the following:

## RECOMMENDATIONS

1.  Defendant Alstad's Motion for Summary Judgment (Doc. 32) should be DENIED AS MOOT.

2.  Defendant Alstad's Motion for Summary Judgment (Doc. 61) and the CoreCivic Defendants' Motion for Summary Judgment (Doc. 65) should be GRANTED and this matter should be DISMISSED.

3.  The Clerk of Court should be directed to close the case and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  No reasonable person could suppose an appeal would have merit.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations

within fourteen (14) days after service (mailing) hereof.[2]  28 U.S.C. § 636.  Failure
to timely file written objections may bar a de novo determination by the district
judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of
Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed
until entry of the District Court's final judgment.

DATED this 16th day of May, 2019.


_____*/s/ John Johnston*_____
John Johnston
United States Magistrate Judge

---

[2]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Biederman is being served by mail, he is entitled an additional three days after the period would otherwise expire.